FILED

03/27/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0505

DA 17-0505

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 59

IN RE THE MARRIAGE OF:

TRACY L. SCHILLING,

      Petitioner and Appellant,

  And

JOHN R. SCHILLING, JR.,

      Respondent and Appellee.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DR-12-611
Honorable Karen S. Townsend, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Lucy Hansen, Judnich Law Office, Missoula, Montana

      For Appellee:

      Richard A. Reep, Reep, Bell, Laird & Jasper, P.C., Missoula, Montana

Submitted on Briefs: March 7, 2018

Decided: March 27, 2018

Filed:

                                                            Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Tracy L. Schilling (Tracy) appeals from the March 14, 2017 order of the Fourth Judicial District Court, Missoula County, denying Tracy's Motion to Amend Parenting Plan, determining Tracy failed to establish a changed circumstance. The order further granted John R. Schilling, Jr.'s, (John) Motion for Child Support Calculation and Motion for Attorney Fees. The court later assessed attorneys' fees and costs in the amount of $20,534.14. We reverse and remand.

¶2 We restate the issues on appeal as follows:

1. *Did the District Court err in concluding there was no change in circumstance pursuant to § 40-4-219(1), MCA, that would require a hearing?*

2. *Did the District Court err in awarding Appellee attorneys' fees and costs?*

3. *Did the District Court err in amending child support and concluding the amended support should commence as of April 1, 2016?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 Tracy and John were previously married and divorced. They have one child together, N.K.S., currently 12 years old. At the time of their divorce, they entered into a Stipulated Parenting Plan, which was drafted by John's attorney as Tracy was not represented by counsel. That Stipulated Parenting Plan provided John would serve as the sole custodian of N.K.S. The Stipulated Parenting Plan contemplated Tracy would be moving away from the Missoula area and when she did so she would have parenting time on designated holidays, specified time during summers, and other time "by agreement of the parties." Tracy moved to Idaho shortly thereafter and from March 2013 through March 2016 N.K.S. resided with John in Missoula. Tracy traveled to Missoula as often as she

2

could to spend time with N.K.S. Tracy submitted into evidence her calendars whereby she asserts she exercised 132 overnights with N.K.S. in 2014, 114 overnights in 2015 and 25 overnights in the first 3 months of 2016. She asserts she also spent several additional days each year in Missoula with N.K.S. John does not believe Tracy exercised as much time with N.K.S. as she asserts. Although the parties dispute the exact time Tracy spent with N.K.S. after she moved to Idaho, they both admit it was considerably more than the specified holiday and summer time set forth in the Stipulated Parenting Plan.

¶4 On March 4, 2016, John filed a Notice of Intent to Move with N.K.S. to West Yellowstone, Montana. In his Notice, John asserted that amendment of the parenting plan was not necessary as he did not anticipate his change of residence would have a significant impact on Tracy's parenting time. Tracy did not agree with John's assertion and filed an objection to John's Notice. In her objection, Tracy asserted John's move would add an additional 300 miles distance between her and N.K.S., significantly affecting her ability to see and spend time with N.K.S. At the time of filing her objection, she also filed a Motion to Amend [Stipulated] Parenting Plan asserting a number of concerns regarding John's parenting.

¶5 On July 22, 2016, the District Court held a hearing for the limited purpose of considering John's relocation to West Yellowstone with N.K.S. and its effect on Tracy's contact. Further, the District Court heard arguments regarding whether Tracy met the threshold requirement of a change in circumstance under § 40-4-219(1), MCA, to amend the parenting plan. The District Court, ruling from the bench, found John's move to West Yellowstone had not negatively impacted Tracy's visitation with N.K.S. because John

3

would drive N.K.S. to Missoula for the parental exchanges. The District Court issued its order on March 14, 2017, finding Tracy had not established the prerequisite of a change in circumstance, which would allow the District Court to consider amending the parenting plan. The District Court then determined John to be the prevailing party and, as such, determined John was entitled to an award of attorneys' fees and costs. The District Court also concluded amendment of child support was appropriate since more than three years had elapsed since the court's prior child support order. Ultimately, the District Court ordered Tracy to pay $583.00 per month in child support commencing April 1, 2016, and to pay John's attorneys' fees and costs of $20,534.14.

## STANDARD OF REVIEW

¶6 We review the underlying findings in support of a district court's decision to modify a parenting plan under the clearly erroneous standard. *Guffin v. Plaisted-Harman*, 2010 MT 100, ¶ 20, 356 Mont. 218, 232 P.3d 888 (citation omitted). We review a district court's conclusions of law to determine if they are correct. *In re the Parenting of C.J.*, 2016 MT 93, ¶ 12, 383 Mont. 197, 369 P.3d 1028 (citation omitted). A district court has broad discretion when considering the parenting of a child, and we must presume the court carefully considered the evidence and made the correct decision. *C.J.*, ¶ 13 (citation omitted). Accordingly, absent clearly erroneous findings, we will not disturb a district court's decision regarding parenting plans unless there is a clear abuse of discretion. *C.J.*, ¶ 13 (citation omitted).

DISCUSSION

¶7    *1. Did the District Court err in concluding there was no change in circumstance pursuant to § 40-4-219(1), MCA, that would require a hearing?*

¶8    In pertinent part § 40-4-219(1), MCA, provides:

> The court may in its discretion amend a prior parenting plan if it finds, upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child.

The pivotal question is whether John's relocation with N.K.S. from Missoula, Montana, to West Yellowstone, Montana, constitutes a change in circumstances of N.K.S. requiring the District Court to have a hearing to determine if amendment of the parenting plan is necessary to serve N.K.S.'s best interests.

¶9    Tracy asserts John's relocation to West Yellowstone is a significant change in circumstance for N.K.S. as it substantially impacts N.K.S.'s contact with her. She asserts from March 2013 through March 2016, prior to John's move to West Yellowstone, she exercised substantial parenting of N.K.S. During this time, Tracy asserts she parented N.K.S. as follows:

- 2014:  132 overnights and an additional 14 days.

- 2015:  114 overnights and an additional 7 days.

- 2016 (January through April): 25 overnights and an additional 5 days.

The time Tracy has parented N.K.S. after the parties' dissolution through to the time when John and N.K.S. moved to West Yellowstone has significantly exceeded the specific periods of parenting provided to her in the parties' Stipulated Parenting Plan and Order.

¶10    John asserts his relocation to West Yellowstone is not a change in circumstance as he intends to bring N.K.S. to Missoula for Tracy to exercise her parenting time. Tracy counters that since John moved, not only has she been precluded from exercising the additional time with N.K.S. the parties have historically agreed to, but John has not consistently brought N.K.S. to Missoula and has instead required she meet him in Butte or drive to West Yellowstone to pick up N.K.S.

¶11    The parties' Stipulated Parenting Plan and Order provides Tracy shall enjoy parenting on particular holidays and summer time and additional time "by agreement of the parties." The District Court noted, "that any additional parenting time exercised by Tracy beyond what was spelled out in the Parenting Plan was by agreement of the parties." The District Court concluded John's move to West Yellowstone did not negatively impact Tracy's parenting time with N.K.S. "according to the stipulated Parenting Plan because John would drive NKS to Missoula for the parental exchanges provided for in the Stipulated Plan." The District Court's order denying Tracy's Motion to Amend Parenting Plan implies Tracy will not be entitled to exercise the additional time she has historically exercised with N.K.S. as such will no longer be mutually agreed to by the parties. It follows that this lack of mutual agreement is occasioned by the fact John no longer resides in Missoula and would have to drive nearly 300 miles each way to take N.K.S. to Missoula.

¶12    Merely because the parties' Stipulated Parenting Plan provides they may mutually agree on additional parenting time for Tracy does not mean the additional time they have historically agreed upon should not be considered in determining whether Tracy's parenting time is negatively impacted by John's move or in determining if there has been

6

a change in N.K.S.'s circumstances as a result of John's move. When a parenting plan provides for additional time as the parties may agree, the court should consider the additional time agreed to by the parties and whether it is of such nature, extent, and duration to constitute a de facto modification of the original parenting schedule in itself.

¶13 In considering Tracy's parenting time, she has enjoyed parenting time under the particular periods set forth in the parties' Stipulated Parenting Plan and the additional time to which she and John have historically mutually agreed. The evidence shows John's relocation to West Yellowstone has reduced the amount of time N.K.S. spends with Tracy and is a change in N.K.S.'s circumstance. Indeed, the District Court found John's move constituted a significant enough change, along with the passage of time, to warrant modification of child support to include expenses related to John's travel from West Yellowstone to Missoula to effectuate Tracy's parenting time. The evidence in the present case establishes as a matter of law a change in N.K.S.'s circumstances has occurred as a result of John's move to West Yellowstone. As such, the District Court erred in concluding otherwise. We reverse and remand for hearing and determination of whether amendment of the parenting plan is in N.K.S.'s best interests.

¶14 *2. Did the District Court err in awarding Appellee attorney fees and costs?*

¶15 The parties' Stipulated Parenting Plan, drafted by John's attorney, provides two enforcement paragraphs:

> 10. **ENFORCEMENT.** This Parenting Plan shall be made an integral part of any decree of dissolution of marriage provided by law or equity. This Parenting Plan shall be binding upon the parties, their personal representatives, heirs, and assigns. Should any action be commenced to

7

enforce, modify, or interpret any provision contained herein, the court, as a cost of suit, shall award reasonable attorneys' fees to the successful party.

14. **ENFORCEMENT.** Should either party be required to retain the services of counsel to enforce any provision of this Parenting Plan, the prevailing party in any proceeding shall be entitled to recover from the non-prevailing party his or her attorneys' fees and costs.

Tracy asserts these two paragraphs are conflicting as they offer different terms for the award of attorney fees and, further, are ambiguous in the treatment of attorney fees. Tracy argues both provisions appear to be applicable to "Enforcement," but the case does not involve an enforcement action. She asserts this case involves an objection to relocating N.K.S. to West Yellowstone as well as her Motion to Amend [Stipulated] Parenting Plan. Finally, she asserts she was not represented by counsel at the time she entered into the Stipulated Parenting Plan and, as John's attorney drafted the document, the ambiguity should be resolved in her favor. Conversely, John asserts paragraphs 10 and 14 are not in conflict and, at most, are redundant.

¶16 The District Court found these provisions were not inconsistent and John was entitled to recover his attorneys' fees and costs for enforcing the existing parenting plan and recovering child support.

¶17 The District Court erred in concluding the action involved enforcing the existing parenting plan. John filed his Notice of Intent to Move advising he intended to move with N.K.S. to West Yellowstone, Montana, on April 1, 2016, and that he did not anticipate any modification to the visitation schedule agreed to by the parties as he intended to bring N.K.S. to Missoula to effectuate the visiting schedule agreed to by the parties. Tracy objected to John's move asserting the move would significantly reduce the time she spends

8

with N.K.S. and then also filed a Motion to Amend the Final Parenting Plan. This matter involved consideration of John's Notice to Move and Tracy's objection thereto and whether John's move with N.K.S. constituted a change in circumstance warranting further consideration as to whether amendment of the parenting plan was in N.K.S.'s best interests. As previously discussed, the District Court erred in not considering the additional parenting time the parties historically agreed to in concluding the move would not negatively impact Tracy's contact with N.K.S. and, as such, was not a changed circumstance. As we reversed on that issue above and have remanded back to the District Court for hearing and determination of whether amending the parenting plan is in N.K.S.'s best interests, it is appropriate to vacate the award of attorneys' fees and costs. Determination as to whether the enforcement paragraphs contained in the parties' Stipulated Parenting Plan are applicable or in conflict is, at best, premature. We vacate the award of attorneys' fees and costs and remand to the District Court for further consideration consistent with this Opinion.

¶18    *3. Did the District Court err in amending child support and concluding the amended support should commence as of April 1, 2016?*

¶19    At the time the parties entered into their Stipulated Parenting Plan, they agreed given "the earning capacity of each parent and the allocation of the income tax exemption, as well as the parties' arrangement for health care costs and premiums and daycare costs, no support shall be paid by Mother to Father." The District Court noted that since Admin. R. M. 37.62.2103 and 37.62.2117 allow for recalculation of child support if more than three years has passed since child support was established, it was appropriate to grant John's

9

request for calculation of child support and ordered Tracy to commence paying child support April 1, 2016.

¶20 Tracy asserts the District Court erred with regard to ordering child support and in commencing it when it did. She asserts John did not make a motion for child support such that she was not on notice it was at issue. Tracy further asserts the District Court acted arbitrarily in calculating child support by failing to conduct a hearing and failing to rely on verified evidence of the parties' financial circumstances and cost of health insurance coverage.

¶21 It is noted that the Rules cited by the District Court deal with situations where child support is calculated and ordered by the Child Support Enforcement Division, which did not occur here. Regardless, the evidence supports reviewing child support based on John's loss of employment in Missoula, obtaining new employment in West Yellowstone, attendant changes to health insurance, and the long-distance travel costs incurred by both parents resulting from John's move.

¶22 Further, the District Court did not err in concluding John made a sufficient request for child support to put Tracy on notice it was at issue, nor did it err in concluding child support should commence April 1, 2016. John specifically requested calculation of appropriate child support in his March 25, 2016 Combined Response. This was served on Tracy, via mail to her counsel of record, on March 25, 2016. This effectively put Tracy on notice of John's request for child support.

¶23 Section 40-4-208(1), MCA, permits modification of support "only as to installments accruing subsequent to actual notice to the parties of the motion for modification." Based

on this, the District Court properly determined child support should commence April 1, 2016, the first full month after Tracy received notice of John's request to calculate appropriate child support.

¶24    Child support is not only dependent upon the financial circumstances of the parties and cost of health insurance, but on the residential schedule of the parenting plan and the long-distance visitation costs the parties will incur to effectuate the parenting schedule.  As we have remanded this case to the District Court for hearing and determination as to whether amendment of the parenting plan is in N.K.S.'s best interests, it is appropriate to vacate the monthly child support calculated by the District Court and remand the calculation of child support to the District Court for further consideration consistent with this Opinion.

## CONCLUSION

¶25    The District Court's finding there was no change in circumstance pursuant to § 40-4-219(1), MCA, with John's move nearly 300 miles further away was clearly erroneous. Thus, this matter is reversed and remanded to the District Court for hearing and consideration as to whether amendment of the parenting plan is necessary to meet N.K.S.'s best interests.  As we reverse and remand on this issue, it is necessary to vacate the award of attorneys' fees and costs and the monthly child support amount and remand for further consideration of these matters consistent with this Opinion.

/S/ INGRID GUSTAFSON

11

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JIM RICE
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER